AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Manuel Tolentino,<br>Erizon Fermin,<br>Samuel Pacheco and<br>Lawrence Anthony Wade-Smith,<br><br>*Defendant(s)* | )<br>)<br>) Case No.<br>)     21-6073-SNOW<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __Dec. 2020, through Feb. 10, 2021,__ in the county of __Broward and Miami-Dade__ in the
__Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(b)(1)(A), and 841(b)(1)(B); 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1) and 841.(b)(1)(A), and 18 U.S.C. § 2;<br><br>18 U.S.C. §§ 924(c) and 2 | conspiracy to possess with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, and 500 grams or more of a mixture or substance containing a detectable amount of cocaine; distribution of mixture or substance containing a detectable amount of fentanyl; and possession with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl<br>possession of firearms during drug trafficking crime (only Pacheco and Wade-Smith) |

This criminal complaint is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

                                                                      *Complainant's signature*

                                            Joshua Passman, DEA Task Force Officer
                                                          *Printed name and title*

Sworn to and subscribed before me telephonically
this 11th day of February, 2021.

                                                       *Judge's signature*

City and state:         Fort Lauderdale, Florida             Lurana S. Snow, United States Magistrate Judge
                                                                         *Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Joshua Passman, being duly sworn, hereby state as follows:

1.  I am a Task Force Officer with the Drug Enforcement Administration (DEA), assigned to the Miami Field Division. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1). I have been a sworn law enforcement officer since October 2003. In December 2009, I was assigned to the Broward Sheriff's Office, Strategic Investigations Division, which is part of the High Intensity Drug Trafficking Area (HIDTA) program. In January 2015, I was assigned to the DEA. I have received specialized training in the means and methods used by narcotics traffickers to import and distribute narcotics, drug smuggling methods, and the concealment and laundering of proceeds from illicit drug trafficking activities. I have personally conducted and participated in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds. During the course of these investigations, I have participated in search warrant executions and have debriefed or participated in debriefings of defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations. The aforementioned investigations resulted in the arrest and prosecution of numerous individuals for narcotics violations and other violations under Titles 18 and 21 of the United States Code.

2.  I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1).

3. I make this Affidavit in support of a criminal complaint charging Manuel Tolentino, Erizon Fermin, Samuel Pacheco, and Lawrence Anthony Wade-Smith with the following criminal violations:

- conspiracy to possess with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A);
- conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B);
- distribution of mixture or substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2; and
- possession with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A), and Title 18, United States Code, Section 2.

The Affidavit also supports charging Pacheco and Wade-Smith with possession of firearms during and in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

4. I submit this Affidavit based on my personal knowledge, as well as information provided to me by other individuals, including other law enforcement officials, and my review of records and other evidence obtained during the course of this investigation. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, it does not include every fact known to me about this matter.

## PROBABLE CAUSE

5. In December 2020, law enforcement recruited a confidential source (CS) who had been purchasing large quantities of cocaine and fentanyl from Manuel Tolentino and his associate, Erizon Fermin, both of whom are members of Tolentino Drug Trafficking Organization ("Tolentino DTO"). The CS met Tolentino in prison. After their release, the CS began purchasing narcotics from Tolentino. After his/her recruitment by law enforcement, the CS advised that Tolentino had subordinates who

worked for him, including Fermin. The CS added that Tolentino and Fermin used runners to deliver narcotics directly to the CS.

### December 17, 2020

6. On December 17, 2020, at the direction of law enforcement, the CS placed a series of controlled calls to Tolentino and Fermin in order to purchase several hundred fentanyl pills. During one of the calls, Fermin told the CS that he (Fermin) was out of town and would not be returning until the following day. Later that day, the CS spoke to Tolentino, who advised that he could provide two hundred seventy-three (273) fentanyl pills for thirteen dollars ($13.00) per pill, for a total of three thousand five hundred forty-nine dollars ($3,549.00). Tolentino told the CS that a courier would be delivering the pills to the CS' residence, located in Hollywood, Florida. The CS agreed to the arrangement.

7. Prior to the controlled transaction, law enforcement searched the CS and his/her vehicle, confirming that both were free of contraband and money. Law enforcement then provided a recording device and three thousand five hundred fifty dollars ($3,550.00) in Official Advanced Funds (OAF) to the CS. Law enforcement maintained continuous surveillance of the CS as the CS waited in front of his residence in order to ensure he/she did not make contact with anyone prior to the deal.

8. Approximately one hour after agreeing to the deal with Tolentino, a Hyundai SUV, white in color, bearing New Jersey plate U15LMN arrived at the CS' residence. Law enforcement later identified the driver of the vehicle as A.B.B., the front seat passenger as Samuel Pacheco, and the backseat passenger as Lawrence Wade-Smith. Pacheco exited the Hyundai and provided the CS with a clear plastic bag containing the requested pills in exchange for $3,550.00. Simultaneous to the Hyundai's arrival, the CS received a call from Tolentino who advised that the couriers were arriving. After the deal, A.B.B., Pacheco, and Wade-Smith departed in the Hyundai.

9. Following the deal, the CS departed his residence while law enforcement maintained surveillance of the CS until he/she reached as the predetermined meeting location. The CS did not make

any stops or contact with anyone along the way. Law enforcement met with the CS and recovered the clear plastic bag that he/she received from Pacheco. The contents of the bag, which weighed approximately thirty grams, field-tested positive for the presence of fentanyl. Law enforcement again searched the CS and the CS' vehicle, and found them both to be free of contraband.

January 6, 2021

10. On January 6, 2021, law enforcement arrived at the CS' residence and him/her, confirming the CS to be free of contraband. The CS received eight hundred dollars ($800.00) in OAF to pay to Fermin towards his/her outstanding debt.[1] Before departing, law enforcement installed an undercover officer ("UC") at the residence posing as an associate of the CS. At approximately 11:50 am, Fermin called the CS and advised that his daughter would be driving him to the CS' residence.

11. At approximately 12:30 pm, a Hyundai sedan, silver in color, bearing Florida tag NKFP22 arrived and parked in front of the CS' residence. There were two occupants of the vehicle: E.F., who was the driver and registered owner of the vehicle, and Fermin. Fermin exited the vehicle and entered the CS' residence alone. Once inside, Fermin met with the CS and the UC. During this meeting, a conversation ensued in which they discussed the CS' debt to the DTO. Fermin advised the CS that, because Fermin paid off the CS' outstanding debt of four thousand dollars ($4,000.00) to Tolentino, the CS now owed him that amount. The CS then provided Fermin with $800.00, while Fermin provided the CS with two ounces of cocaine. At approximately 12:40 pm, Fermin exited the CS' residence, reentered the passenger side of the Hyundai, and departed the area.

12. Subsequent to the meeting, the CS immediately provided the cocaine to law enforcement. It field-tested positive for the presence of cocaine.

---

[1] Law enforcement provided the CS with money to apply towards the CS' debt with the DTO in order to preserve the relationship between the CS and the DTO in furtherance of this investigation.

## January 12, 2021

13. On January 12, 2021, the CS arranged to meet with Fermin at Fermin's residence. At approximately 10:30 a.m., the CS met with law enforcement at a predetermined location. Law enforcement searched the CS and his/her vehicle, confirming them to be free of any contraband. Law enforcement provided two thousand five hundred dollars ($2,500.00) in OAF to the CS and equipped him/her with audio/video recording devices. Law enforcement maintained surveillance of the CS as he/she departed the meeting location and drove to Fermin's residence. A detective rode with the CS in the CS' vehicle to Fermin's residence but remained in the vehicle once they arrived. After the CS entered the residence, he/she met with Fermin. While inside, Fermin provided an ounce of suspected fentanyl in exchange for one thousand two hundred dollars ($1,200.00) in OAF. The remaining one thousand three hundred dollars ($1,300.00) went towards the CS' debt to Fermin. Fermin also showed the CS what the CS estimated to be a little under one (1) kilogram of cocaine. Following the deal, the CS departed the area with the detective in his/her vehicle. The CS turned over the suspected fentanyl – which field-tested positive for the presence of fentanyl – to the detective. Law enforcement searched the CS, who was free of any contraband.

14. At approximately 2:30 p.m., Fermin showed up at the CS' residence unexpectedly. Fermin provided the CS with sixty-four (64) grams of cocaine because he (Fermin) did not want to drive back to Miami with that quantity. The CS immediately contacted your affiant, who responded to the CS' residence with another detective to recover the cocaine. It field-tested positive for the presence of cocaine.

## January 19, 2021

15. On January 19, 2021, the CS met with Fermin at a gas station in Hollywood, Florida. During this meeting, the CS provided five hundred dollars ($500.00) in OAF towards his/her debt.

January 25, 2021

16. On January 25, 2021, the CS met with Tolentino at 13048 SW 120th St., Miami, Florida, which is the location of a t-shirt business that Tolentino owned. During this meeting, Tolentino discussed prices and availability of cocaine, heroin, and fentanyl. Additionally, Tolentino told the CS that he (Tolentino) was expecting a shipment of several kilograms of cocaine the following week. Tolentino explained to the CS that he had Fermin handling the operations for the DTO. At the conclusion of the meeting, the CS told Tolentino that he/she had a buyer for two hundred (200) fentanyl pills in an effort to determine if Tolentino was storing narcotics at this location. Tolentino proceeded to call Fermin in front of the CS to facilitate the CS' order. Fermin advised he was not in the area and the CS would have to wait a couple of hours. Law enforcement did not pursue this deal further.

February 1, 2021

17. On February 1, 2021, at approximately 10:00 a.m., Fermin stopped by the CS' residence. Fermin advised that he had three (3) kilograms of cocaine if the CS had a buyer. The CS responded that he/she would look for a buyer. The CS then asked to purchase one and a half (1.5) ounces of fentanyl later in the day. They agreed to meet later in the evening.

18. At approximately 7:00 p.m., law enforcement met with the CS at a predetermined location in Miami, Florida. Law enforcement searched the CS and his/her vehicle, confirming them to be free of any contraband. Law enforcement provided three thousand dollars ($3,000.00) in OAF to the CS and equipped him/her with audio/video recording devices. During a recorded call, Fermin directed the CS to come to his residence in ten (10) minutes. A detective drove with the CS in the CS' vehicle to Fermin's residence. Upon arriving, the CS exited the vehicle and entered the residence while the detective remained in the vehicle. While inside, the CS provided Fermin with one thousand eight hundred dollars ($1,800.00) in exchange for 1.5 ounces of fentanyl. Fermin also provided the CS with approximately two (2) grams of what Fermin purported to be pure fentanyl. The CS provided the remaining one

thousand two hundred dollars ($1,200.00) to Fermin to pay down the CS' debt. When the CS asked if he/she could see the three (3) kilograms that Fermin discussed earlier. Fermin advised that the couriers from an earlier deal were in possession of it. The CS exited the residence and returned to the vehicle, at which time the CS turned over the narcotics to the detective in the vehicle. Law enforcement subsequently searched the CS and confirmed that he/she was without any contraband. The narcotics field-tested positive for the presence of fentanyl.

19. At approximately 8:00 p.m., the CS called Fermin and asked to purchase one hundred (100) fentanyl pills. Fermin directed the CS to call one of his couriers. Fermin then sent contact information for "Sam" to the CS along with an address in Miami, Florida. Law enforcement established surveillance in the area of the courier's address prior to the CS arriving in the area with the detective. Once he/she arrived, the CS called "Sam." During the call, "Sam" told the CS that he was getting in the elevator to come down and meet the CS. A short time later, law enforcement observed Pacheco exit the elevator before exiting the building itself. Pacheco walked around the building and met with the CS. Pacheco then provided 100 fentanyl pills to the CS. Following the transaction, Pacheco went to a vehicle parked nearby and began removing shopping bags from it. The vehicle in question was the same one that Pacheco used to deliver the fentanyl pills to the CS' residence on December 17, 2020. Upon returning to the vehicle, the CS provided the fentanyl to the detective. The substance field-tested positive for the presence of fentanyl.

February 3, 2021

20. On February 3, 2021, law enforcement conducted surveillance of the building where Pacheco exited before conducting the February 1, 2021, transaction. At approximately 2:37 p.m., your affiant observed Pacheco exit the lobby of the building, at which time Pacheco entered the front passenger seat of a Hyundai SUV, white in color. Your affiant followed the vehicle as it drove to 488 NE 18 Street, Miami, Florida, at which time it parked on the curb. A few moments later, a pickup truck

parked in front of the vehicle, Pacheco exited the Hyundai, walked up to the pickup truck, and began conversing with the occupants as he (Pacheco) stood by the passenger side window. Following the meeting, both vehicles departed the area. The Hyundai drove back to Pacheco's residence, parking on the south side of the building. Pacheco and the female driver exited the vehicle and walked into the lobby of the building at which time law enforcement lost sight of them.

21. At approximately 4:26 p.m., your affiant observed Pacheco and an unidentified female exit the same building. At the time, Pacheco carried a plastic grocery-type bag. Pacheco and the female entered the Hyundai and drove away. Your affiant followed the vehicle as it drove back to 488 NE 18 Street, again parking on the curb. After a short wait, your affiant observed Pacheco meet with an unidentified male, at which time Pacheco gave the plastic shopping bag to the male.[2] Pacheco then reentered the Hyundai and drove back to the building. Both Pacheco and the female entered the lobby, at which time law enforcement terminated surveillance.

## Additional Investigative Steps

22. Law enforcement served an administrative subpoena on Florida Power and Light ("FPL") for accounts related to Tolentino, Fermin, and the couriers. Data received from FPL showed an active account for Wade-Smith,[3] specifically at 915 NW 1st Ave., #H2906, Miami, Florida, and an active account for A.B.B. The address associated with A.B.B.'s FPL account listed Pacheco's old phone number as the contact number. On this same date, a UC entered the 915 NW 1st Avenue building and knocked on the door of apartment #H2906. At the time of the knocking, the UC posed as a food delivery driver. Pacheco answered the door and denied ordering any food, at which time the UC advised he was on the wrong floor and left.

---

[2] In your affiant's training and experience, Pacheco's conduct was consistent with the conducting of a hand-to-hand transaction involving narcotics.

[3] Records identified him as "Lawrence Anthony Wade."

23. On February 9, 2021, United States Magistrate Judge Alicia M. Otazo Reyes of the Southern District of Florida authorized the search of Fermin's residence and 915 NW 1st Avenue, #H2906, Miami, Florida.

February 10, 2021

24. On February 10, 2021, at approximately 9:00 a.m., at the direction of law enforcement, the CS placed a call to Fermin to order a half kilogram of fentanyl. During the conversation, Fermin implied that he (Fermin) had to pick up the narcotics at another location and would be on his way in a little bit.

25. At approximately 10:25 a.m., law enforcement observed a Honda sedan, white in color, arrive outside of Fermin's residence. Fermin entered the vehicle, which transported him to the 915 NW 1st Avenue, Miami, Florida, building. A short time later, Fermin exited the building carrying a bag and reentered the Honda. The Honda departed the location and began travelling north on I-95. Law enforcement observed the Honda merge onto the Florida turnpike and travel north before ultimately exiting at the Griffin Road exit. The Honda then got back on the turnpike heading south and later onto I-95 south. Law enforcement then terminated surveillance

26. A short time later, law enforcement observed Fermin exiting the Honda in front of his residence. During a subsequent phone call with the CS, Fermin advised that there was "heat" in Miami. In your affiant's training and experience, "heat" is a common term utilized by individuals engaged in drug trafficking when they suspect law enforcement is monitoring their movements. Fermin advised that he would come in about an hour and would have a courier arriving separately with the narcotics.

27. At approximately 11:30 a.m., law enforcement arrested Tolentino at the Fort Lauderdale-Hollywood International Airport as he was attempting to board a flight headed to the Dominican Republic. At the time, Tolentino was traveling with his girlfriend. Law enforcement conducted a search of their luggage and found approximately eight thousand dollars ($8,000.00) in each of their two bags.

In your affiant's training and experience, the manner in which Tolentino and his girlfriend divided the sixteen thousand dollars ($16,000.00) between two bags was done with the intent to evade the currency reporting requirements.

28. At approximately 12:30 p.m., Fermin arrived at the CS' residence in an Uber or Lyft. Fermin entered the CS' residence and met with the CS' and a UC. Fermin explained that another person would be arriving shortly with the narcotics, adding that Fermin's daughter would arrive shortly thereafter to take Fermin and the courier back to Miami. A short time later, Fermin's daughter arrived in a silver Hyundai. Fermin met with her in the driveway as he waited for the arrival of the courier.

29. At approximately 1:10 p.m., Wade-Smith arrived at the CS' residence in an Uber or Lyft while carrying a bag. Wade-Smith provided the bag to Fermin, who then brought the bag into the CS' residence and gave it to the CS and the UC. The bag contained approximately five hundred seventy-two (572) grams of fentanyl and ninety-seven (97) grams of cocaine. Both later field-tested positive for the presence of fentanyl and cocaine, respectively.

30. After the transaction, Wade-Smith and Fermin exited the residence and entered silver Hyundai, which departed the area and began travelling east on Stirling Road. Law enforcement initiated a traffic stop on the vehicle, at which time law enforcement took Fermin and Wade-Smith into custody. Your affiant explained to Fermin that law enforcement had obtained a search warrant for his residence. Fermin agreed to accompany agents back to the residence with the intent of safely facilitating the execution of the warrant.

31. During the search of Fermin's residence, law enforcement seized the following items six hundred thirty-nine (639) grams of fentanyl pills and forty-four (44) grams of cocaine from a black duffel bag, marijuana, suspected molly, a drug ledger, and other paraphernalia. The fentanyl pills and cocaine both field-tested positive.

32. At approximately 2:50 p.m., law enforcement obtained a key for the residence located at 915 NW 1st Avenue, #H2906, Miami, Florida, from the leasing office before executing the search warrant. While conducting the search, law enforcement observed Pacheco arrive in the parking lot at which time law enforcement placed him under arrest. Law enforcement seized the following items from the kitchen area: approximately four (4) kilograms of fentanyl, approximately three (3) kilograms cocaine, and four hundred twenty-seven (427) grams of heroin. Law enforcement seized the following items from the common area closet: three (3) firearms, a kilo press, a money counter, seventeen (17) grams of fentanyl, and approximately eighteen (18) kilograms of marijuana. Law enforcement confirmed that two of the firearms were reported stolen out of Dade County.

## CONCLUSION

33. Based on the above information and facts, your affiant submits there is probable cause to believe that Manuel Tolentino, Erizon Fermin, Samuel Pacheco, and Lawrence Anthony Wade-Smith committed the following violations:

- conspiracy to possess with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A);

- conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B);

- distribution of a mixture or substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2; and

- possession with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A), and Title 18, United States Code, Section 2.

Your affiant also submits there is also probable cause to believe that Pacheco and Wade-Smith with possession of firearms during and in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

Joshua Passman, Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed before me telephonically this __11th__ day of February, 2021.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 21-6073-SNOW

### BOND RECOMMENDATION

DEFENDANT: Lawrence Anthony Wade-Smith

Pre-Trial Detention
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:  Ajay J. Alexander

Last Known Address: _____

_____

_____

What Facility: BSO Main Jail

_____

Agent(s): DEA TFO Joshua Passman
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 21-6073-SNOW

## BOND RECOMMENDATION

DEFENDANT: Lawrence Anthony Wade-Smith

Pre-Trial Detention
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA: Ajay J. Alexander

Last Known Address: _____

What Facility: BSO Main Jail

Agent(s): DEA TFO Joshua Passman
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 21-6073-SNOW

### BOND RECOMMENDATION

DEFENDANT: Lawrence Anthony Wade-Smith

Pre-Trial Detention
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   Ajay J. Alexander

Last Known Address: _____

What Facility: BSO Main Jail

Agent(s): DEA TFO Joshua Passman
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 21-6073-SNOW

## BOND RECOMMENDATION

DEFENDANT: Lawrence Anthony Wade-Smith

Pre-Trial Detention
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:  Ajay J. Alexander

Last Known Address: _____

_____

_____

What Facility: BSO Main Jail

_____

Agent(s): DEA TFO Joshua Passman
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)